U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
NOV - 1 2012
CLERK, U.S. DISTRICT COURT
By _____
        Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| PAMELA CRAINEY, § | |
|    Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. 4:11-CV-613-A |
| § | |
| MICHAEL J. ASTRUE, § | |
| Commissioner of Social Security, § | |
|    Defendant. § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE
## AND
## NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions, and Recommendation of the United States Magistrate Judge are as follows:

### FINDINGS AND CONCLUSIONS

### I. STATEMENT OF THE CASE

Plaintiff Pamela Crainey ("Crainey") filed this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claim for disability insurance benefits ("DIB") under Title II and supplemental security income ("SSI") under Title XVI of the Social Security Act ("SSA").[1] Crainey applied for DIB and SSI on September 26, 2008, alleging that her disability began on March 1, 2001. (Tr. 179, 186.) Her applications were denied initially and on reconsideration. (Tr. 84–93, 101–08.)

Crainey then requested a hearing before an administrative law judge ("ALJ"), which was held on February 10, 2010. (Tr. 24.) The ALJ issued an unfavorable decision on July 28, 2010.

---

[1] It appears from the record that Crainey withdrew her DIB claim at the hearing before the administrative law judge. (Tr. 26–27.) However, the ALJ decided the issue of disability under both Title II and XVI. (Tr. 11, 23.) Therefore, the Court will consider both applications.

(Tr. 11–23.) On June 30, 2011, the Appeals Council denied Crainey's request for review, leaving the ALJ's decision as the final decision of the Commissioner in her case. (Tr. 1–3.) Crainey subsequently filed this civil action seeking review of the Commissioner's decision.

## II.   STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and SSI benefits are governed by Title XVI, 42 U.S.C. § 1381 *et seq.*, of the SSA. In addition, numerous regulatory provisions govern disability insurance and SSI benefits. *See* 20 C.F.R. Pt. 404 (2012) (disability); 20 C.F.R. Pt. 416 (2012) (SSI). Although technically governed by different statutes and regulations, "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and the SSI." *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). The SSA defines a "disability" as a "medically determinable physical or mental impairment" lasting at least twelve months that prevents the claimant from engaging in "any substantial gainful activity." 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *see McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).

To determine whether a claimant is disabled, and thus entitled to benefits, a five-step analysis is employed. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). First, the claimant must not be presently working at any substantial gainful activity. *Id.* §§ 404.1520(b), 416.920(b). "Substantial gainful activity" is defined as work activity "that involves doing significant physical or mental activities . . . for pay or profit." *Id.* §§ 404.1572, 416.972. Second, the claimant must have an impairment or combination of impairments that is severe. *Id.* §§ 404.1520(c), 461.920(c); *see also Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment contained in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1.   20 C.F.R. §§ 404.1520(d),

416.920(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* §§ 404.1520(f), 416.920(f). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* §§ 404.1520(g), 416.920(g); *Crowley v. Apfel*, 197 F.3d 194, 197–98 (5th Cir. 1999).

Before moving from the third to the fourth step of the inquiry, the Commissioner assesses the claimant's residual functional capacity ("RFC") to determine the most the claimant can still do notwithstanding his physical and mental limitations. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant's RFC is used at both the fourth and fifth steps of the sequential analysis. *Id.* §§ 404.1520(a)(4), 416.920(a)(4). At step four, the claimant's RFC is used to determine if the claimant can still do her past relevant work. *Id.* §§ 404.1520(e), 416.920(e). At step five, the claimant's RFC is used to determine whether the claimant can adjust to other types of work. *Id.* §§ 404.1520(e), 416.920(e). At steps one through four, the burden of proof rests upon the claimant to show that she is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of her existing impairments. *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no

substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

### III. ISSUES

1. Whether the ALJ's mental RFC finding is supported by substantial evidence; and

2. Whether the ALJ erred in failing to specifically determine whether plaintiff could hold a job for a significant period of time.

(Pl.'s Br. 1.)

### IV. ALJ DECISION

In her July 28, 2010 decision, the ALJ concluded that Crainey was not disabled within the meaning of the SSA. (Tr. 8–23.) The ALJ first concluded that Crainey had met the insured status requirements of the SSA through June 30, 2004. (Tr. 14.) The ALJ then followed the five-step sequential evaluation process. (Tr. 14–23.) At step one, the ALJ found that Crainey had not engaged in substantial gainful activity since March 1, 2001. (Tr. 14.) At step two, the ALJ found that Crainey's bipolar disorder and polysubstance abuse were severe impairments under the *Stone* severity standard. (Tr. 14.) At step three, the ALJ found that Crainey's medically determinable impairments did not meet or equal an impairment contained in the Listing. (Tr. 14.) Next, the ALJ found that Crainey had the RFC to perform a full range of work with the following limitations:

> [Crainey] could only engage in incidental contact with coworkers, supervisors, and the public. She would also need to avoid work-related hazards, including working with moving machinery, working at unprotected heights, working with open flames/dangerous chemicals, and performing a job that requires driving a vehicle. [Crainey] could only be expected to perform simple tasks and could be

expected to be off task for any reason for up to 5 minutes per hour. [Crainey] would also be expected to be absent from work up to 4 days a month.

(Tr. 15.) At step four, the ALJ found that Crainey had no past relevant work. (Tr. 19.)

The ALJ proceeded to step five and concluded that, due to all of Crainey's impairments, including her substance abuse, there were no jobs that existed in significant numbers in the national economy that Crainey could perform. (Tr. 19.) However, the ALJ went on to find that, if Crainey stopped her substance abuse, the nonexertional limitations of her RFC would be less restrictive as follows:

> If [Crainey] stopped the substance use, [Crainey] would have the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations. [Crainey] could engage in only occasional contact with coworkers and supervisors and incidental interaction with the general public. She would need to avoid work-related hazards, including working with moving machinery, working at unprotected heights, working with open flames/dangerous chemicals, and performing a job that requires driving a vehicle. [Crainey] could only be expected to perform simple 1 and 2-step tasks.

(Tr. 21.) After considering testimony from a vocational expert, the ALJ found that, if Crainey stopped her substance abuse, there would be a significant number of jobs in the national economy that Crainey could perform and, thus, Crainey would not be disabled. (Tr. 22.) Accordingly, the ALJ concluded that Crainey's substance abuse was a contributing factor material to the disability determination under 20 C.F.R. sections 410.1535 and 416.935, so Crainey had not been disabled from the alleged onset date through the date of the ALJ's decision. (Tr. 22.)

After the ALJ's decision, Crainey requested review by the Appeals Council and submitted new evidence, including medical records created after the hearing date. The Appeals Council examined the record and this new evidence and ultimately denied Crainey's request for review. (Tr. 1–3.)

## V. DISCUSSION

### A. <u>ALJ's Mental RFC Finding</u>

Crainey first claims that the ALJ's ultimate RFC finding, which assessed her abilities as they would be if she stopped her substance abuse, was not supported by substantial evidence. (Pl.'s Br. 4–6.) She argues that this RFC is contradicted by (1) medical findings of Crainey's treating physician, Sarah Rasco, M.D. ("Dr. Rasco") and (2) medical findings of Gretchen Megowen, M.D. ("Dr. Megowen"). (Pl.'s Br. 4–6.)

An individual's RFC is the most that the individual can do despite his or her limitations. SSR 96-8p, 61 Fed. Reg. 34474, 34475 (July 2, 1996), *available at* 1996 WL 374184. It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis. *Id.; see also Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). A regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule. SSR 96-8p, 61 Fed. Reg. at 34475. RFC is not the least an individual can do, but the most. *Id.* The RFC assessment is a function-by-function assessment, with both exertional and nonexertional factors to be considered, and is based upon all of the relevant evidence in the case record. *Id.* at 34476–78. The responsibility for determining the claimant's RFC lies with the ALJ. *See Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995).

On October 2, 2009, Dr. Rasco completed a "Medical Assessment of Plaintiff's Ability to Do Work-Related Activities (Mental)." (Tr. 964–66.) Dr. Rasco reported that Crainey's polysubstance abuse was in "full sustained remission" at the time of evaluation.[2] (Tr. 965.) Dr. Rasco concluded that Crainey had some loss of ability in five of the sixteen measured activities,

---

[2] The DSM-IV defines "Sustained Full Remission" as a specifier used when "none of the criteria for Dependence or Abuse have been met at any time during a period of 12 months or longer." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 196 (4th ed. text rev. 2000) [hereinafter "*DSM-IV*"].

6

substantial loss in seven, and extreme loss in four others.[3] (Tr. 964–65.) Dr. Rasco assigned a Global Assessment of Functioning ("GAF") score of 45 out of 100, which indicated serious symptoms or serious impairments in social, occupational, or school functioning. (Tr. 965.) *See* DSM-IV, *supra* note 2, at 34. Also, Dr. Rasco noted that the limitations listed would be produced by the mental impairments regardless of substance use. (Tr. 966.) In her decision, the ALJ stated that Dr. Rasco's opinion appeared to be based in large part on Crainey's subjective allegations, and she assigned "no[] significant weight" to Dr. Rasco's opinion. (Tr. 18.)

Crainey complains that the ALJ improperly evaluated Dr. Rasco's assessment under "section 416.927 of the regulations." (Pl.'s Br. 6.) Under the regulations, a treating source's medical opinion is given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). However, the determination of disability always remains the province of the ALJ, and the ALJ can decrease the weight assigned to a treating physician's opinion for good cause, which includes disregarding statements that are brief and conclusory, unsupported by acceptable diagnostic techniques, or otherwise unsupported by the evidence. *Leggett*, 67 F.3d at 566; *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994); *see also* 20 C.F.R. §§ 404.1527(d), 416.927(d). Furthermore, medical

---

[3] Specifically, Dr. Rasco noted some loss in (1) the ability to apply commonsense understanding to carry out simple one- or two-step instructions, (2) the ability to apply commonsense understanding to carry out detailed but uninvolved written or oral instructions, (3) the ability to act appropriately with the general public, (4) the ability to ask simple questions or request assistance, and (5) the ability to maintain personal appearance.
   Dr. Rasco noted substantial loss in (1) the ability to demonstrate reliability by maintaining regular attendance and being punctual within customary tolerances, (2) the ability to maintain concentration for an extended period of time (i.e., two hours), (3) the ability to maintain attention/stay on task for an extended period of time (i.e., two hours), (4) the ability to perform at a consistent pace without an unreasonable number and length of rest period/breaks, (5) the ability to make simple work-related decisions, (6) the ability to accept instructions and respond appropriately to criticism from supervisors, and (7) the ability to get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes.
   Dr. Rasco noted extreme loss in (1) the ability to behave in an emotionally stable manner, (2) the ability to respond appropriately to changes in a routine work setting, (3) the ability to cope with normal work stress (even those inherent in low-stress jobs) without exacerbating pathologically based symptoms, and (4) the ability to finish a normal work week without interruption from psychologically based symptoms. (Tr. 964–65.)

source opinions on certain issues, such as the severity of the claimant's impairment and the claimant's RFC, are not given any special significance because they are opinions on ultimate issues reserved to the Commissioner. *Id.* §§ 404.1527(d)(2)–(3), 416.927(d)(2)–(3).

In determining that Crainey would have the RFC to perform a full range of work with certain nonexertional limitations if she stopped her substance abuse, the ALJ considered, but largely disregarded, Dr. Rasco's opinion. (Tr. 18.) The ALJ stated three reasons for rejecting Dr. Rasco's assessment. First, the ALJ examined the record evidence and found that Crainey had not been sober since 2005 except for a six- to eight-month period during 2008. Accordingly, Dr. Rasco's statement that Crainey's substance abuse was in "full sustained remission"—i.e., Crainey neither had been dependent upon nor had abused drugs in at least twelve months—was inconsistent with the record. Second, the ALJ found that Dr. Rasco's assessment was inconsistent with the medical history, which showed that Crainey had demonstrated significant improvement even during periods of substance use. (Tr. 18.) And third, the ALJ found that Dr. Rasco's assessment appeared to be based in large part on Crainey's subjective allegations, which were not credible. (Tr. 18.) Crainey does not refute these reasons or otherwise attempt to explain why they are not well-founded. The ALJ's review of the evidence is thorough, and the Court finds that substantial evidence sufficiently supports the ALJ's conclusions.

Crainey also argues that the ALJ erred in assigning no significant weight to Dr. Rasco's opinion because Dr. Megowen's February 11, 2011 "Medical Assessment of Ability to Do Work-Related Activities (Mental)" supports Dr. Rasco's opinion. (Pl.'s Br. 5.) Crainey submitted Dr. Megowen's assessment to the Appeals Council on February 23, 2011, which was over a year after the February 10, 2010 hearing before the ALJ. (Tr. 1158.) In its Notice of Appeals Council Action, the Appeals Council stated that it had considered additional evidence submitted by Crainey, including Dr. Megowen's assessment. (Tr. 1.) Crainey argues that,

8

because Dr. Megowen's opinion was not prepared until after the hearing date, remand is required to allow the ALJ to evaluate and weigh this new evidence. (Pl.'s Br. 5–6.)

A claimant may submit "new and material evidence" to the Appeals Council for consideration when deciding whether to grant a request for review of an ALJ's decision. 20 C.F.R. §§ 404.970(b), 416.1470(b). To be considered material, the evidence must "relate to the time period for which benefits were denied." *Johnson v. Heckler*, 767 F.2d 180, 183 (5th Cir. 1985); *see also* 20 C.F.R. §§ 404.970(b), 416.1470(b) ("If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision."). Evidence of a later-acquired disability or a subsequent deterioration of a nondisabling condition is not material. *Johnson*, 767 F.2d at 183.

Dr. Megowen's February 11, 2011 assessment was dated after the ALJ's July 28, 2010 decision, and Crainey does not claim or demonstrate that Dr. Megowen's assessment involved the period on or before the date of the ALJ's decision or otherwise related to the time period for which benefits were denied. Therefore, the Appeals Council was not required to consider Dr. Megowen's opinion. However, the Appeals Council stated in its denial of Crainey's request for review that it had considered Crainey's additional evidence, so this evidence is part of the record underlying the Commissioner's final decision on Crainey's applications for benefits. *See Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005) ("[T]he record before the Appeals Council constitutes part of the record upon which the final decision is based."). Thus, the Court should review the record as a whole, including the new evidence, to determine whether the Commissioner's findings are still supported by substantial evidence. *See Higginbotham v. Barnhart*, 163 F. App'x 279, 281–82 (5th Cir. 2006). A court "should remand only if the new evidence dilutes the record to such an extent that the ALJ's decision becomes insufficiently

supported." *Michell v. Astrue*, No. 4:10-CV-339-Y, 2011 WL 1630895, at *3 (N.D. Tex. Apr. 29, 2011). In this case, the new evidence does not require remand.

First, there is no indication that Dr. Megowen's assessment adds any analysis or objective medical evidence to Crainey's abilities as they existed during the period prior to the ALJ's July 28, 2010 decision. Second, Dr. Megowen's assessment does not dilute the ALJ's reasons for rejecting Dr. Rasco's opinion. For example, Dr. Megowen's assessment does not cure the inconsistencies found by the ALJ between the record evidence and Dr. Rasco's opinion that Crainey's polysubstance abuse was in full sustained remission. In addition, Dr. Megowen's assessment provides no new objective medical evidence of Crainey's condition during the relevant time period to dispute the ALJ's finding that Dr. Rasco's opinion was inconsistent with the medical history. And finally, the credibility issues raised by the ALJ as problematic in Dr. Rasco's assessment are also implicated in Megowen's assessment because, in light of the inconsistencies between the medical evidence and both doctors' opinions, the same concern that the assessments are largely based on Crainey's subjective allegations applies equally to Dr. Megowen's opinion. (Tr. 16, 18, 1159–69.) After a review of the record as a whole, the Court cannot conclude that Crainey's new evidence dilutes the record to the point that the ALJ's ultimate RFC finding is insufficiently supported. Therefore, remand is not required. *See Michell*, 2011 WL 1630895, at *3.

Again, the final responsibility for determining Crainey's RFC lay with the Commissioner. *See Ripley*, 67 F.3d at 557. The Commissioner was required to consider statements by a physician about what Crainey could still do despite her impairments because they were an important consideration in assessing Crainey's RFC, but such statements were not determinative. *See* 20 C.F.R. §§ 404.1513(b), 404.1527, 404.1545, 416.913(b), 416.927, 416.945. Furthermore, the ALJ properly explained her reasoning for decreasing the weight

assigned to Dr. Rasco's opinion, including her decision to disregard statements that were unsupported by the evidence. *Leggett*, 67 F.3d at 566; *see also* 20 C.F.R. §§ 404.1527(d), 416.927(d). Thus, the Court is unpersuaded by Crainey's argument in her first issue that the RFC finding is not supported by substantial evidence, and remand is not required on this ground.

### B. The Ability to Sustain Employment

In her second issue, Crainey claims that because bipolar disorder, by its very nature, waxes and wanes in severity, the ALJ erred by failing to make a specific finding as to whether Crainey retained the ability to obtain and maintain work. (Pl.'s Br. 6.) The Fifth Circuit has held that an ALJ errs when the ALJ fails to determine whether a claimant is capable of not only obtaining, but also maintaining, employment. *Watson v. Barnhart*, 288 F.3d 212, 218 (5th Cir. 2002). However, the Fifth Circuit later clarified that *Watson* does not require a separate finding on a claimant's ability to maintain work in every case. *Frank v. Barnhart*, 326 F.3d 618, 619 (5th Cir. 2003) (per curiam). Instead, a separate finding is appropriate in cases in which the claimant's ailment "waxes and wanes in its manifestation of disabling symptoms." *Frank*, 326 F.3d at 619; *see also Perez v. Barnhart*, 415 F.3d 457, 464–65 (5th Cir. 2005) (holding that Perez's claim of having "good days and bad days" did not rise to the level of impairment that would require a separate finding). "Usually, the issue of whether the claimant can maintain employment for a significant period of time will be subsumed in the analysis regarding the claimant's ability to obtain employment." *Frank*, 326 F.3d at 619.

Crainey seems to argue that her bipolar disorder rises to the level of impairment that requires this separate finding because bipolar disorder, by definition, involves episodes of manic and depressive states with periods of stability. (Pl.'s Br. 6–7.) However, the Court rejects Crainey's blanket statement that "mental impairments, by their nature, are such 'that the claimant is unable to remain employed for any significant period of time.'" (Pl.'s Br. 7) (citing *Perez*, 415

F.3d at 465, and *Singletary v. Bowen*, 798 F.2d 818, 821 (5th Cir. 1986)). The *Singletary* court stated that, "*[q]uite often*," a claimant suffering from a mental condition is capable of "working for short periods of time" but is also "unable to remain employed for any significant period of time." 798 F.2d at 821 (emphasis added). The *Singletary* court held that the underlying determination that the claimant could maintain employment was not supported by substantial evidence. Importantly, though, the court stated this holding only after thoroughly reviewing the evidence in the case and considering the record as a whole. *Id.* at 823. Accordingly, the Court does not read *Singletary* as standing for the proposition that a claimant with a mental impairment automatically is unable to maintain employment, and Crainey cites no case law supporting such an interpretation.

Indeed, numerous courts have required something more than a mere diagnosis of bipolar disorder to determine that the impairment waxes and wanes in its manifestation of disabling symptoms such that a separate finding regarding the claimant's ability to maintain work is required. *See, e.g., Barratt v. Astrue*, No. 07-51067, 2008 WL 2325636, at *1–2 (5th Cir. June 6, 2008) (per curiam) (holding that the ALJ was not required to make the separate finding because there was no evidence that the claimant "could work only in short spurts, or that his [bipolar disorder] otherwise waxes and wanes in a manner that prevents him from maintaining employment"); *Latoksi v. Astrue*, No. 2:09-CV-198, 2011 WL 4526086, at *14–15 (N.D. Tex. Sept. 13, 2011) (holding that the ALJ was not required to make the separate finding because there was no evidence showing that the claimant's bipolar disorder fluctuated between "periods of apparent stability and periods of definite incapacitation" to such a degree that would render her unable to maintain employment), *adopted by* 2011 WL 4526086 (N.D. Tex. Sept. 28, 2011); *Todd v. Astrue*, No. H-09-2687, 2010 WL 3894102, at *13 (S.D. Tex. Sept. 30, 2010) (concluding that there was no evidence that, "by its nature," the claimant's bipolar disorder

waxed and waned in sufficient intensity to require the separate finding); *McPeters v. Astrue*, No. 1:07-CV-112-C, 2008 WL 4414542, at *13 (N.D. Tex. Sept. 30, 2008) (concluding that, even though the symptoms imposed by the claimant's bipolar disorder and other mental impairments had "varied" over the years, the ALJ did not err by omitting the separate finding); *see also Tigert v. Astrue*, No. 4:11-CV-435-Y, 2012 WL 1889694, at *7 (N.D. Tex. May 2, 2012) ("[I]t is not enough for a claimant to assert, in general, that the impairment waxes and wanes; the claimant must demonstrate that *his particular impairment* waxes and wanes.") (emphasis added), *adopted by* 2012 WL 1899388 (N.D. Tex. May 24, 2012). Thus, a court must look to the medical evidence to determine whether a disorder's intermittent episodes rise to the level of "disabling symptoms."

To support her argument, Crainey cites *Cline v. Astrue*, in which the court held that the ALJ erred by failing to make the specific determination of whether a claimant suffering from bipolar disorder could maintain a job for a significant period of time. 577 F. Supp. 2d 835, 850 (N.D. Tex. 2008). In *Cline*, the court stated that the evidence in the case "was not so limited" to evidence of "bad and good days" only. *Id.* The medical record in *Cline* showed that the claimant had been diagnosed with severe bipolar disorder with psychotic features, including symptoms such as hallucinations, paranoia, and manic/depressive tendencies. *Id.* at 839–41. The claimant's treating physician specifically noted that the claimant "had been unable to sustain full time employment due to intermittent periods of depression or periods when [the claimant] would become irritated or 'oppositional with his supervisor' to an extent that he would be fired from the position." *Id.* at 849–50. Under these circumstances, the court concluded that the claimant's bipolar disorder sufficiently waxed and waned in its manifestation of disabling symptoms such that the ALJ was required to make the specific finding on the claimant's ability to maintain employment. *Id.* at 850. Notably, there is no indication that the claimant in *Cline*

abused drugs or alcohol or that any substance abuse exacerbated the symptoms of his mental impairment.

Here, in contrast, Crainey points to no evidence in this case that *her particular impairment* waxes and wanes in an intensity that manifests disabling symptoms when she is not abusing drugs. The ALJ reviewed the medical evidence and concluded in her decision that "after one of [Crainey's] longest periods of sobriety, a period the evidence suggests lasted approximately 3 to 6 months, the claimant demonstrated very mild symptomatology." (Tr. 17.) Noting that Crainey was "less than forthright about her substance use" to her medical providers, the ALJ observed that although Crainey reported a worsening of her symptoms during 2009, substance abuse was at issue during that time. Thus, the ALJ concluded that "there is insufficient evidence to establish exacerbated depressive symptoms in the absence of substance use." (Tr. 18.)

In short, Crainey fails to point to any evidence that *her* bipolar disorder "waxes and wanes in its manifestation of disabling symptoms." *Frank*, 326 F.3d at 619. She does not point to evidence showing that she can work only for short periods of time or that her mood fluctuated between periods with few symptoms and periods of definite incapacitation in a manner that would prevent her from maintaining employment. The Court recognizes that bipolar disorder by definition typically consists of shifts between manic and depressive episodes. However, the mere fact that Crainey has been diagnosed with bipolar disorder is not enough to warrant a separate finding absent some showing that her particular illness results in intermittent periods of incapacity. Crainey has not made this showing. Therefore, the absence of a specific finding

regarding Crainey's ability to obtain and maintain employment does not constitute error, and Crainey's second issue does not require remand.[4]

## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

---

[4]Crainey also complains of the ALJ's stating that there was no evidence that she had pursued or required medical care until July 2005, when she was diagnosed with bipolar disorder, crack abuse, and alcohol dependency. Crainey claims that her history of bipolar disorder dates back to at least 2002, when she was hospitalized for self-mutilation and a suicide attempt. (Pl.'s Br. 6.) Crainey stated in a July 18, 2005 treatment record that she had "been depressed forever," but she had not begun experiencing hallucinations (i.e., "hearing and seeing the horsies") until "just recently." (Tr. 615.) However, Crainey later claimed in a February 8, 2006 treatment record that she had been "experiencing auditory hallucinations for the past four years but did not tell anyone because of fears that she 'would get locked into a little room.'" (Tr. 286.)

Other than Crainey's conflicting subjective reports about when her hallucinations began, Crainey does not point to any evidence in the record of an actual diagnosis of bipolar disorder prior to July 18, 2005. The July 18, 2005 record reports that Crainey had been diagnosed with major depressive disorder—but not bipolar disorder—on March 24, 1999. (Tr. 615.) The July 18, 2005 treatment record also reports that Crainey had been voluntarily admitted to a hospital for one day in 2002 for self-mutilation, but the record does not state that she had been diagnosed with bipolar disorder at that time. (Tr. 615–16.) Accordingly, Crainey has not shown that the record contains evidence contradicting the ALJ's observation that she had not pursued or required medical care until July 2005 for her bipolar disorder, the condition that she claimed limited her ability to work. (Tr. 199.)

## **ORDER**

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until November 15, 2012, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED November 1, 2012.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE